UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| THE UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:11-cv-00504 HEA |
| ) | |
| MASK OF KA-NEFER-NEFER, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM IN SUPPORT OF THE UNITED STATES' MOTION FOR
LEAVE TO FILE FIRST AMENDED VERIFIED COMPLAINT FOR FORFEITURE**

The United States respectfully requests that it be given leave to file an amended complaint that corrects the defects identified in this Court's dismissal order. Although the Court recently upheld its order dismissing the Verified Complaint, the Court has not indicated that any proposed amendment to the Verified Complaint would be futile. While the United States prepared its original complaint in reliance upon the construction of Section 1595a employed in cases like *United States v. One Lucite Ball*,[1] the Court's dismissal order follows the Second Circuit's intervening decision in *United States v. Davis*,[2] which suggested that the United States must allege some "predicate" violation before the importation of stolen property can be considered "contrary to law." The First Amended Verified Complaint does just that, providing facts to indicate the violation of numerous statutes in the course of the Mask's theft, purchase, and importation. Because the proposed amendment remedies the perceived defects in the original complaint and contains facts sufficient to

---

[1]   648 F.3d 84 (2d Cir. 2011).

[2]   252 F. Supp. 2d 1367 (S.D. Fla. 2003).

1

suggest that the United States will be able to meet its trial burden of showing probable cause for forfeiture, the United States respectfully requests that the Court grant it leave to file the amendment.

**I.     Granting Leave to Amend Is Appropriate Where, as Here, the Proposed Amendment Remedies the Defects of the Original Complaint**

"[I]t is well settled that leave to amend should be freely given when justice so requires."[3] "Unless there is a good reason for denial, such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment, leave to amend should be granted. Delay alone is not enough to deny a motion to amend; prejudice to the nonmovant must also be shown."[4] Even after judgment, "a party may still move for leave to amend[,] and amendments should be granted liberally."[5]

In applying these standards, the Court must keep in mind the admonition of the Supreme Court in *Foman v. Davis*:

> It is . . . entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of . . . mere technicalities. The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.[6]

Interpreting *Foman*, the Eighth Circuit has recently noted that although "district courts in this circuit have considerable discretion to deny a post-judgment motion for leave to amend," they may not

---

[3]   *Williams v. Little Rock. Mun. Water Works*, 21 F.3d 218, 224 (8th Cir. 1994).

[4]   *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 840–41 (8th Cir. 2004) (internal quotations and citations omitted).

[5]   *Dorn v. State Bank of Stella*, 767 F.2d 442, 443 (8th Cir. 1985).

[6]   *Foman v. Davis*, 371 U.S. 178, 181–82 (1962); *see also id.* at 182 (overturning denial of motion to vacate judgment so as to permit amendment where "amendment would have done no more than state an alternative theory of recovery").

"ignore the Rule 15(a)(2) considerations that favor affording parties an opportunity to test their claims on the merits, particularly when a . . . complaint has been dismissed for failure to comply with [applicable] pleading requirements . . . ."[7]

In this case, the Court's dismissed the complaint for failing to comply with the pleading requirements of Supplemental Rule G(2) because it did not include sufficient "(1) facts related to whether the Mask was 'stolen, smuggled, or clandestinely imported or introduced' and (2) facts related to some predicate unlawful offense."[8] In response to these concerns, the United States seeks leave to add several additional allegations that remedy those perceived defects. As such, the United States respectfully submits that the proposed amendment would not be not futile and that the Court should therefore grant the United States leave to file an amended complaint.

### A. The Proposed Amendment Provides Further Evidence That the Mask Was Stolen

The original complaint alleged merely that the Mask was taken from Saqqara between 1966 and 1973.[9] The Court found that these allegations were insufficient in part because the complaint did not further allege that the reason the Mask was "missing" from Saqarra was because it was "stolen and then smuggled out of the country." Although the proposed amendment does not identify the individual who stole the Mask or the precise date of the theft (since such information is unknown), it does provide additional allegations supporting the inference that the Mask was stolen and smuggled out of Egypt. First, it describes information relating to the nature of the illicit antiquities

---

[7] *Roop v. Hypoguard USA, Inc.*, 559 F.3d 819, 824 (8th Cir. 2009).

[8] Opinion (Doc. #34) at 5–6.

[9] Verified Complaint (Doc. #1) at ¶ 7–18.

3

market and the methods used to obscure the true provenance of stolen artifacts.[10] It then goes on to establish the falsity of the provenance provided to the Museum, which is contradicted by Egypt's own records.[11] It also describes the provisions of Egyptian law that create Egypt's ownership interest in the Mask and alleges the absence of any gift or sale of the Mask by Egypt to a private party, as well as the absence of any records of lawful export from Egypt.[12] Finally, it alleges that the sellers of the Mask are themselves convicted smugglers of artifacts.[13]

At this time it is unknown "who" stole the Mask, precisely "when," or "why."[14] But Section 1595a requires only that the United States provide probable cause to believe the Mask was "stolen," not that it prove the precise circumstances of the theft.[15] Indeed, as described in the United States' Motion to Reconsider, several courts have found that a foreign country's declaration of national ownership is alone sufficient to establish the stolen nature of an artifact.[16] The United States respectfully submits that the proposed amendment clearly establishes probable cause to believe that the Mask was stolen property when it was imported into the United States, and it respectfully requests that its motion for leave to amend be granted.

---

[10]   *See* Proposed Amended Complaint at ¶¶ 7–15.

[11]   *Compare* Proposed Amended Complaint at ¶¶ 16–27 *with* ¶¶ 62–66.

[12]   *See* Proposed Amended Complaint at ¶¶ 28–44.

[13]   *See* Proposed Amended Complaint at ¶¶ 54–55.

[14]   *See* Opinion (Doc. #34) at 7.

[15]   It appears that the Museum concedes that such allegations are not required in order for a complaint to be sufficient. *See* Mem. in Opp. to Mot. to Reconsider (Doc. #40) at 10 ("The Government's objection about being required to 'establish the date, location, or motive behind the stealing, let alone the identity of the thief' overstates what the court expected.").

[16]   *See* Mem. in Supp. of Mot. to Reconsider (Doc. #38) at 4–6.

### B. The Proposed Amendment Pleads Violations of Numerous "Predicate Offenses"

Paragraph 99 of the proposed amendment states numerous alternative grounds to conclude that the Mask's importation was "contrary to law" beyond its merely being "stolen" under Section 1595a. Included among these are the Egyptian laws regarding the ownership and export of Egyptian artifacts described above. Also included are Sections 2314 and 2315 of Title 18, which prohibit the knowing transportation and receipt of stolen merchandise. Willful blindness is sufficient to establish the knowledge element of those statutes.[17] Likewise, section 570.080 of the Missouri Revised Statutes makes it a crime to receive, retain, or disposes of property of another knowing or believing it to be stolen, and New York Penal Law sections 165.52 and 165.55 criminalizes the possession of stolen property by a person in the business of buying property without reasonable inquiry as to the rightful possession of the seller.

To promote an inference of knowledge and/or willful blindness by either the Museum or the sellers of the Mask, the proposed amendment sets forth in detail the suspicious provenance provided by the sellers and describes the minimal steps taken by the Museum to verify its truthfulness.[18] The proposed amendment also alleges that the sellers and the Museum both knew of the controlling provisions of Egyptian law which rendered the Mask the property of Egypt, and that the Museum failed to hold the sellers to their contractual obligation to provide import and export licenses before it purchased the Mask.[19] Together with the other allegations pled in the proposed amendment, these

---

[17] *See, e.g.*, *United States v. Cunningham*, 83 F.3d 218, 221 (8th Cir. 1996); *United States v. Gruenburg*, 989 F.2d 971, 974–75 (8th Cir. 1993).

[18] Proposed Amended Complaint at ¶¶ 62–86.

[19] Proposed Amended Complaint at ¶¶ 46–48, 56, 82–85.

5

facts provide a reasonable basis to believe that the United States will be able to show probable cause at trial to establish the violation of one or more of the cited statutes. For these reasons, the United States respectfully requests that the Court grant its motion for leave to amend.

## II.  The Instant Motion Is Timely

A motion for leave to amend a complaint after dismissal may be filed either as a motion to "alter or amend the judgment" pursuant to Rule 59(e) or a motion for relief from judgment under Rule 60(b).[20] Which construction a motion receives is important for at least two reasons:

- First, a Rule 59(e) motion, because it "question[s] the correctness of the judgment" it seeks to alter,[21] suspends the finality of the judgment, and thus the time for filing notice of appeal does not begin until the motion is ruled upon.[22] A Rule 60(b) motion, by contrast, does not affect the finality of the judgment and therefore does not extend a party's appeal time.[23]

- Second, as the Court recognized in its ruling on the United States' Motion to Reconsider, a Rule 59(e) motion permits the court to correct any "manifest error," whereas a Rule 60(b) motion requires an additional showing of cause.[24]

---

[20]  *Quartana v. Utterback*, 789 F.2d 1297, 1300 (8th Cir. 1986).

[21]  *Id.* at 1300 (citing *Seshachalam v. Creighton Univ. Sch. of Med.*, 545 F.2d 1147 (8th Cir. 1975)).

[22]  *See* Fed. R. App. Proc. 4(a)(4)(A); *see also Stone v. INS*, 514 U.S. 386, 402–03 (1995) (explaining that "the majority of post-trial motions, such as Rule 59, render the underlying judgment nonfinal . . . when filed before an appeal is taken, thus tolling the time for taking an appeal . . . ."); *United States v. Ibarra*, 502 U.S. 1, 5 (1991) (noting that "the consistent practice in civil and criminal cases alike has been to treat timely petitions for rehearing as rendering the original judgment nonfinal for purposes of appeal for as long as the petition is pending" and extolling "the presumed benefits of this rule—district courts are given the opportunity to correct their own alleged errors, and allowing them to do so prevents unnecessary burdens being placed on the courts of appeals").

[23]  *See Stone*, 514 U.S. at 403.

[24]  *Compare* Ord. on Mot. to Reconsider (Doc. #48) at 2 (citing *White v. New Hampshire Dep't of Employment Sec.*, 455 U.S. 445, 450 (1982) (internal quotations omitted)) *with* Fed. R. Civ. P. 60(b) (requiring showing of cause for relief, including "mistake, inadvertence, surprise or excusable neglect").

For the reasons set forth below, the United States urges the Court to consider the instant motion a timely motion under Rule 59(e) because it was filed within 28 days after the Court's most recent final order. In the event, however, that this Court finds the motion would be untimely under Rule 59(e), the United States respectfully requests that the Court consider the motion under Rule 60(b)(1) on account of the "mistake, inadvertence, surprise, or excusable neglect" arising from the United States' confusion with regard to the finality of the Court's dismissal order.

### A.   If Considered a Rule 59(e) Motion, the Instant Motion Was Filed Within 28 Days After the Court's Most Recent Final Order

Ordinarily, a Rule 59(e) motion must be filed within 28 days of a final judgment or order.[25] When a Rule 59(e) motion is filed, however, it suspends the finality of the challenged order.[26] The judgment's finality is not "restored" until the Rule 59(e) motion is granted or denied, at which time the new disposition becomes the final judgment in the case.[27] In this case, the United States filed two prior Rule 59(e) motions, each of which "question[ed] the correctness of the judgment,"[28] and the disposition of which therefore constituted a new final judgment. Just as those motions were filed within 28 days of the then-prevailing final judgment, the instant motion is filed within the time permitted by Rule 59(e) and should therefore be considered under that rule.

---

[25]   Fed. R. Civ. P. 59(e).

[26]   *See Stone*, 514 U.S. at 403; *see also Weyant v. Okst*, 198 F.3d 311, 314–15 (2d Cir. 1999) (citing *Browder v. Dir., Dep't of Corr.*, 434 U.S. 257, 268 (1978)); Fed. R. Civ. P. 59 advisory committee's note (1995).

[27]   *Weyant*, 198 F.3d at 315; *see also id.* at 314 (noting that Federal Rules of Civil Procedure define "judgment" as "any order from which an appeal lies").

[28]   *Quartana*, 789 F.2d at 1300.

7

The below time line demonstrates the timeliness of the instant motion, on the assumption that the Court's April 2 entry of the dismissal order constituted a final judgment.[29]

| | |
|---|---|
| **April 2** | Court enters its dismissal order (Doc. #33), giving the United States until **April 30** to file a Rule 59(e) motion. |
| **April 6** | United States files its Motion for Enlargement of Time (Doc. #35), which expressly requests that the motion be treated as a Rule 59(e) motion if the Court deems the dismissal order to be a final judgment. The filing of the motion suspends the finality of the dismissal order. |
| **April 9** | The Court grants the United States' Motion for Enlargement of Time. Even if the granting of the extension was in error pursuant to Fed. R. Civ. P. 6(b)(2), the disposition of the motion constitutes a new final judgment. The United States has until **May 7** to file any successive Rule 59(e) motion. |
| **May 7** | The United States files its Motion to Reconsider. The filing of the motion suspends the finality of the April 2 and April 9 orders. |
| **June 1** | The Court denies the Motion to Reconsider. The disposition of the motion constitutes a new final judgment. The United States has until **June 29** to file any successive Rule 59(e) motion. |
| **June 8** | The United States files the instant motion under Rule 59(e). The filing of the motion suspends the finality of the June 1 order. |

Although the United States has not identified any authority addressing successive Rule 59(e) motions such as those described above, several courts have had occasion to consider the impact of a Rule 59(e) motion on other deadlines triggered by the entry of final judgment, such as filing notice of appeal or a motion for relief from judgment under Rule 60(b). For example, in *International*

---

[29] While the Court's denial of the United States' Motion to Clarify Orders (Doc. #44) leaves the finality of the dismissal order in some doubt, the fact that the Court analyzed the United States' Motion to Reconsider (Doc. #37) under Rule 59(e) and extended the United States' time to file notice of appeal (Doc. #48) would seem to suggest that the Court considers the dismissal order to have been a final judgment.

*Center for Technology Assessment v. Leavitt*,[30] the court assessed whether a Rule 60(b) motion was timely when it was filed within one year of the court's denial of a Rule 59(e) motion but more than one year after the court's original judgment. Based upon a detailed review of the relevant case law, the court found that "a timely filed Rule 59(e) motion suspends the finality of the judgment not just at the appellate level, but at the district court level as well."[31] As such, the court ruled that its earlier dismissal of the complaint "did not become final until . . . the court denied the 59(e) motion."[32] It went on to find that the plaintiff's Rule 60(b) motion was timely because it was filed within a year of that denial.[33]

Similarly, an appeal of an underlying judgment is timely if it is taken from the disposition of a timely Rule 59(e) motion within the time permitted by the rules.[34] The rationale for that rule is simple: an appellate court should not assume jurisdiction over a matter until all of the issues below have been resolved in order to discourage piecemeal appellate litigation or duplicative proceedings.[35] As in the present case, it is contrary to the interest of judicial economy to require an appellate court to assume jurisdiction over a matter until the district court has fully disposed of any basis that might entitle the appealing party to relief.

---

[30] 468 F. Supp. 2d 200 (2007).

[31] *Id.* at 206.

[32] *Id.*

[33] *Id.* ("[A] judgment's finality is restored upon the resolution of the last of any post-judgment motions that operated to suspend finality." (quoting *Weyant v. Okst*, 198 F.3d 311, 315 (2d Cir. 1999))).

[34] Fed. R. App. Proc. 4(a)(4)(A)(iv) ("If a party timely files in the district court [a motion to alter or amend the judgment under Rule 59], the time to file an appeal runs for all parties from the entry of the order disposing of the last such remaining motion."); *see also Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 59–61 (1982)*; Stone*, 514 U.S. at 403.

[35] *See Osterneck v. Ernst & Whinney*, 489 U.S. 169, 177 (1989); *see also Griggs*, 459 U.S. at 58–59.

Applying the same rules of suspension and restoration of finality to successive Rule 59(e) motions demonstrates that the instant motion is timely. The United States filed the instant motion within 28 days of the most recent final order of this Court, and each prior Rule 59(e) motion was likewise filed within the 28 days from the preceding final order. The judgment in this case will therefore not be final until "the entry of the order disposing of the last such remaining [Rule 59(e)] motion."[36] The United States therefore respectfully requests that the Court consider the instant motion as a motion to "alter or amend the judgment" under Rule 59(e) and grant relief accordingly.

### B. If Considered a Rule 60(b) Motion, the Motion Is Made Within a Reasonable Time After the Entry of Final Judgment, and There Is Cause for Granting the Motion

Even if the Court were to conclude that the finality of its dismissal order was not suspended by the United States' successive motions under Rule 59(e), it may still consider the instant motion under Rule 60(b), which permits the Court to relieve a party from a final judgment or order. Among the grounds for relief are the "mistake, inadvertence, surprise, or excusable neglect" of the moving party and "any other reason that justifies relief." In this case, the United States respectfully submits that the Court should grant the instant motion in the interest of justice on the basis of the United States' confusion as to the nature and force of this Court's prior orders.

As the recent briefing on the United States' Motion to Reconsider has made clear, there is a substantial disagreement between the parties as to the meaning and finality of this Court's dismissal order. On the one hand, the United States understood the Court's dismissal order to be an interlocutory order that did not deprive the United States of the opportunity to seek leave to amend or set any deadline within which the United States would need to seek such leave. On the other hand,

---

[36] Fed. R. App. P. 4(a)(4)(A)(iv); *see also* Fed. R. Civ. P. 54(a) (defining "judgment" as "any order from which an appeal lies").

the Museum construes the dismissal order as a final judgment on the merits of this case that terminated the underlying cause of action.

Although the Court's recent treatment of the United States' Motion to Reconsider as a Rule 59(e) motion suggests that it agrees with the Museum's view, the United States was not without good reason for its contrary belief.[37] Had the Court's order granting the United States' motion for enlargement of time expressly indicated that the dismissal order was final, the United States could have filed the instant motion within 28 days after the dismissal order was entered.[38] It waited only because it interpreted the Court's order enlarging its time as an instruction that any motion to reconsider be filed before any motion for leave to amend. Such a good-faith misunderstanding does not suggest the sort of "dilatory motive" that would justify denying the United States leave to amend.[39]

---

[37] Among the considerations supporting the United States view were the following:
- The dismissal order did not call itself a judgment and did not specify it was with prejudice.
- The dismissal rested on the legal insufficiency of the complaint, not the factual merits of the claim.
- The opinion supporting the dismissal did not "clearly indicate[] either that no amendment is possible or that dismissal of the complaint also constitute[d] dismissal of the action," *Hawks v. JP Morgan Chase Bank*, 591 F.3d 1043, 1050 (8th Cir. 2010), nor did the dismissal order demonstrate "some clear and unequivocal manifestation by the trial court of its belief that the decision made, so far as the court is concerned, is the end of the case," *Goodwin v. United States*, 67 F.3d 149, 151 (8th Cir 1995) (internal quotations and emendations omitted).
- The same day the Court entered the dismissal order, its order staying a parallel declaratory judgment action stated that "the parties' arguments for title should proceed under the civil forfeiture action." *See Art Museum v. United States*, Case No. 4:11-cv-00291 HEA (March 31, 2012).
- The Court granted the Motion for Enlargement of Time (Doc. #35) without vacating the dismissal order, as the United States had requested if the Court considered the dismissal order to be final.

[38] *See First Tier Mortg. Co. v. Investors Mortg. Ins. Co*, 498 U.S. 269, 274 (1991) ("For a ruling to be final, it must end the litigation and the merits, and the judge must clearly declare his intention in this respect." (internal citations and quotations omitted)).

[39] Additional grounds for relief are present on the basis of the Court's dismissal order itself. The Court's dismissal order rests largely on the Second Circuit's decision in *United States v. Davis*, 648 F.3d 84 (2d Cir. 2011), which was decided three months *after* the United States filed its complaint. The Museum did not cite *Davis* in its motion to dismiss (for it had not been decided), and its motion did not press the argument that the complaint was insufficient because it failed to allege any "predicate" violation of law. Moreover,

11

## CONCLUSION

The United States' original complaint was filed under the good faith belief that its allegations demonstrated probable cause for forfeiture on the authority of cases like *United States v. One Lucite Ball*, which hold that property may be considered "stolen" under 19 U.S.C. § 1595a upon a showing that it was taken from its country of origin without permission of its owner. Now that the Court has determined it will follow the pattern of analysis in the intervening decision of the Second Circuit in *United States v. Davis*, the United States proposes an amendment that alleges facts adequate to meet that higher burden. Because the proposed amendment remedies the defects identified by the Court in its order dismissing the original complaint, the United States respectfully requests that it be given leave to file its First Amended Verified Complaint.

Dated: June 8, 2012 	Respectfully submitted,

	RICHARD G. CALLAHAN
	United States Attorney

	 */s/ Richard E. Finneran*
	RICHARD E. FINNERAN, #60768
	Assistant United States Attorneys
	111 South 10th Street, Suite 20.333
	Saint Louis, Missouri 63102
	Telephone: (314) 539-2200
	Facsimile:  (314) 539-2287
	*richard.finneran@usdoj.gov*

---

*Davis* is a Second Circuit decision and is therefore not a controlling precedent for this Court. To the extent that the dismissal order rests on the application of *Davis*, the dismissal order was itself a "surprise" that justifies granting the United States leave to amend under Rule 60(b)(1).

## CERTIFICATE OF SERVICE

    The undersigned hereby certifies that on June 8, 2012, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon all counsel of record.

                                          */s/ Richard E. Finneran*
                                          RICHARD E. FINNERAN, #60768
                                          Assistant United States Attorney