```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF MISSOURI
                      EASTERN DIVISION


UNITED STATES OF AMERICA,         )
                                  )
            Plaintiff,            )
                                  )
   v.                             ) No. 4:11-CV-504-HEA
                                  )
MASK OF KA-NEFER-NEFER,            )
                                  )
            Defendant.            )




                  EX PARTE MOTION HEARING


            BEFORE THE HONORABLE HENRY E. AUTREY
               UNITED STATES DISTRICT JUDGE



                      MARCH 16, 2011
```

**APPEARANCES:**

For Plaintiff:      Dianna R. Collins, AUSA
                    Richard E. Finneran, AUSA
                    **OFFICE OF U.S. ATTORNEY**
                    111 South Tenth Street, 20th Floor
                    St. Louis, MO  63102




*REPORTED BY:*      *Gayle D. Madden, CSR, RDR, CRR*
                    *Official Court Reporter*
                    *United States District Court*
                    *111 South Tenth Street, Third Floor*
                    *St. Louis, MO  63102*
                    *(314) 244-7987*

2

1     (Proceedings started at 3:45 p.m.)

2         THE COURT:  This is the matter of the United States

3  of America versus Mask of Ka-Nefer-Nefer, Case No.

4  4:11-CV-00504.  The matter is now before the Court on the

5  ex parte application of the United States to restrain

6  Defendant property.  Parties are present on behalf of the

7  United States, and I believe we have an agent?

8         SPECIAL AGENT BURDINE:  Yes, sir.

9         MR. FINNERAN:  Yes, sir.

10        THE COURT:  What is your name, sir?

11        SPECIAL AGENT BURDINE:  It's Aaron Burdine.

12        THE COURT:  Aaron Burdine.  All right.  So what's

13 this about here?

14        MR. FINNERAN:  Well, Your Honor, my name is Richard

15 Finneran.  I'm for the United States.  It's my first time

16 appearing before you, so it's very nice to meet you.

17        THE COURT:  Good to see you as well.

18        MR. FINNERAN:  This is a matter of we've just filed

19 today a civil complaint against a artifact that's currently in

20 the possession of the St. Louis Art Museum that's known as the

21 Mask of Ka-Nefer-Nefer, and we've had discussions with that --

22 with the St. Louis Art Museum about this mask.  The Egyptian

23 government and the antiquities people in Egypt believe this

24 mask was illegally imported into the United States and that it

25 was stolen, and that is the basis for our filing our civil

Case: 4:11-cv-00504-HEA Doc. #: 60 SEALED Filed: 08/17/12 Page: 3 of 10 PageID #: 395
Case: 4:11-cv-00504-HEA Doc. #: 60 SEALED Filed: 08/16/12 Page: 3 of 10 PageID #: 385

3

1  forfeiture complaint against the mask.  Typically, in a case
2  like this, we have the authority once we file that complaint
3  to seek a seizure warrant to take possession of the property,
4  but given the unique nature of this property and the fact that
5  it's so old, potentially fragile, and currently in the
6  possession of the art museum, we thought it would be more
7  appropriate in these circumstances to instead seek a
8  restraining order that would basically prevent the museum from
9  disposing of the mask or destroying the mask during the
10 pendency of this litigation but which would permit the mask to
11 remain in their possession so they could have the beneficial
12 use of that property during the litigation and so that the
13 United States wouldn't have to be concerned about potentially
14 damaging the mask in the process of seizing it at this early
15 adversarial juncture.
16         So we've set out in our application the basis for our
17 belief that this mask is subject to forfeiture.  It's laid out
18 in further detail in the verified complaint for forfeiture,
19 which I've handed you and which Mr. Burdine, our agent, has
20 sworn to.  There's also a memorandum of law supporting the
21 proposition that this order can be entered ex parte under the
22 civil forfeiture statute.  All we actually need to do, as I
23 read the statute, is to file a civil complaint, and then a
24 restraining order can issue as of right, but as an extra
25 precaution, we've brought the agent here in case the Court

4

1  wants to inquire at all about the probable cause that's set
2  forth in the verified complaint to confirm that this Court can
3  enter a restraining order against the property.
4          There's a proposed order attached to the ex parte
5  application, and you'll see that all the order really asks is
6  that the status quo be maintained during the pendency of the
7  litigation.  It restrains the museum from alienating the
8  property, destroying it, selling it, entering into any
9  contract that would affect the title of the property.  It also
10 asks the museum to maintain the property in its current
11 condition and to maintain insurance on the property.
12          THE COURT:  Do we know anything about the current
13 value of the mask?
14          MR. FINNERAN:  The current value, I believe -- maybe
15 the agent will speak to this -- I know that -- we know that it
16 was purchased by the museum for approximately $500,000 in the
17 year 1998 --
18          SPECIAL AGENT BURDINE:  Correct.
19          MR. FINNERAN:  -- which, obviously, some time has
20 passed since then, and I don't believe we've had any sort of
21 appraisal to estimate its current value.
22          SPECIAL AGENT BURDINE:  There has not been such an
23 appraisal.
24          MR. FINNERAN:  So we would think probably that price
25 that's set forth as a allegation in our verified complaint.

5

1  That was the purchase price of the mask.
2           THE COURT:  So with respect to this motion with
3  regard to the restraint of the property, what is it that you
4  really want?
5           MR. FINNERAN:  There's an order, Your Honor, that's
6  attached to the application starting on page 4 of the
7  application.
8           THE COURT:  Uh-huh.
9           MR. FINNERAN:  The "whereas" clauses, we can skip
10 over.  The second page, page 5, gives the orders that we ask
11 the Court to enter.  You see the first paragraph is an
12 injunction which prevents the museum from affecting the title
13 to the property, transferring or disposing of it, selling it,
14 giving it away, et cetera.  The second paragraph asks the
15 museum to take reasonable precautions to prevent its
16 destruction or diminution of value.  The third paragraph asks
17 the museum to maintain property insurance on the mask, and the
18 other paragraphs deal with the jurisdiction of this Court and
19 the United States' ability to enforce compliance with the
20 Court's order, and I haven't set a time on them.  I simply put
21 until the judgment is rendered in the case or otherwise a
22 further order of this Court.
23          THE COURT:  So, in other words, you want the mask to
24 stay where it is as is until such further orders basically?
25          MR. FINNERAN:  Yes, that's correct, Your Honor.  We

6

1 could have applied -- Your Honor, we could have applied for
2 the most drastic remedy of filing a seizure warrant against
3 the property, but we -- and our cause there would have been
4 basically the same, in my opinion, to show probable cause to
5 believe the property was subject to forfeiture, but we've
6 selected this less aggressive remedy given the nature of the
7 case.
8     As far as the time limit on the restraining order, if
9 it was a temporary restraining order, that would be true that
10 we would have to have a time limit, but the statute that we've
11 cited -- and I have a copy if you'd like to see it -- 93
12 actually requires the Court to enter a restraining order for
13 the duration of the pendency of litigation against property
14 that's subject to forfeiture, so there's not a set time limit
15 beyond -- beyond that.
16     THE COURT: So if I grant your request, what's the
17 next move?
18     MR. FINNERAN: Well, we've filed our complaint today.
19 Service will be had upon the museum. Procedurally, the way
20 this works is the museum has to enter this proceeding. This
21 is an in rem proceeding against the mask itself, so the museum
22 would have to file a claim, which we anticipate they would,
23 alleging that -- they must show by a preponderance of the
24 evidence that the mask is not subject to forfeiture, that it
25 was acquired lawfully. Our burden is to show probable cause,

7

1  and so they file that claim. We would then go through
2  specialized discovery procedures that are designed for
3  forfeiture proceedings under Rule G. Once those are
4  completed, then this would proceed like any other civil
5  lawsuit. There likely would be motions to dismiss and/or
6  motions for summary judgment. If factual disputes remain,
7  then the case would, I suppose, go to trial, and we've
8  demanded a jury in the event that it does.
9          THE COURT: Interesting.
10         MR. FINNERAN: It's a very unusual procedure.
11     (Off the record discussion.)
12         THE COURT: Back on the record. Thank you, Gayle.
13         Anything else you guys want to tell me?
14         MS. COLLINS: No, Your Honor.
15         MR. FINNERAN: No, Your Honor.
16         THE COURT: Go ahead. Question?
17         LAW CLERK: Bond.
18         THE COURT: Oh, yeah, bond. Yeah, bond, bond, bond,
19 bond, bond. What about bond, yeah, because we were talking
20 about that?
21         MR. FINNERAN: Your Honor, the rule doesn't set forth
22 any need for a bond. This is simply a restraining order.
23 We're not taking custody of the property. We don't -- I see
24 no -- no requirement that we post a bond in the statute.
25         LAW CLERK: But you can.

                                                                    8

1              MR. FINNERAN:  We could.  I --

2              LAW CLERK:  The statute says you can.

3              MR. FINNERAN:  I'm sure that -- that we'd be happy

4    if -- we'd be -- to post whatever bond the Court would

5    require.

6              THE COURT:  What did I say earlier?

7              LAW CLERK:  I don't know.

8              MR. FINNERAN:  Given that the statute --

9              THE COURT:  2.3 million -- is that what it was?

10             LAW CLERK:  How much was -- yeah, what did he say

11   that the mask was worth?

12             THE COURT:  Well, no, because, you know, it's just we

13   were just kind of talking outside, and I said, "Well, you

14   know, what do you think this thing is worth?"  I just said,

15   "Well, you know, it's an artifact.  It's Egyptian.  It's a

16   really old artifact.  Yeah, about 2.3 million," and then, of

17   course, it was purchased in '98 for 500,000 bucks, which I

18   think was a steal.

19             LAW CLERK:  Which is an issue here.

20             LAW CLERK:  Be careful saying that.

21             THE COURT:  Yeah, I mean that in the colloquial

22   fashion --

23             LAW CLERK:  Right.

24             THE COURT:  -- not its legal definition.  So, you

25   know, $500,00 in 1998; it's 2011; 2.3 might be kind of low

9

1  actually, even accounting for inflation and global devaluation
2  of all currencies impacted upon the rapid downfall of the
3  Japanese market resulting from the earthquake and the tsunami.
4  It might be, yeah, about 2.3 million.
5          LAW CLERK:  It's like *Antiques Roadshow* over here.
6          THE COURT:  Is today the 16th?
7          LAW CLERK:  Uh-huh.
8          THE COURT:  Intriguing stuff.
9       (Off record discussion.)
10         THE COURT:  All right.  Well, I'm not going to impose
11 a bond.  That's it.
12         MR. FINNERAN:  Thank you, Your Honor.
13         THE COURT:  Partially because the Government ain't
14 got no money anyway.
15      (Proceedings concluded at 3:58 a.m.)

Case: 4:11-cv-00504-HEA Doc. #: 60 Filed: 08/17/12 Page: 10 of 10 PageID #: 402
Case 4:11-cv-00504-HEA Doc. #: 60 *SEALED* Filed: 08/16/12 Page: 10 of 10 PageID #: 392

10

# CERTIFICATE

I, Gayle D. Madden, Registered Diplomate Reporter and Certified Realtime Reporter, hereby certify that I am a duly appointed Official Court Reporter of the United States District Court for the Eastern District of Missouri.

I further certify that the foregoing is a true and accurate transcript of the proceedings held in the above-entitled case and that said transcript is a true and correct transcription of my stenographic notes.

I further certify that this transcript contains pages 1 through 9 inclusive.

Dated at St. Louis, Missouri, this 16th day of August, 2012.

_____

/s/ Gayle D. Madden

GAYLE D. MADDEN, CSR, RDR, CRR

Official Court Reporter