THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| THE UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 4:11-CV-00504 |
| ) | |
| MASK OF KA-NEFER-NEFER, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| _____ ) | |

**CLAIMANT THE SAINT LOUIS ART MUSEUM'S REPLY
IN SUPPORT OF ITS MOTION  FOR EXTENSION OF TIME AND
OPPOSITION TO GOVERNMENT'S MOTION TO VACATE JULY 2, 2014 ORDER**

On June 30, 2014, the Art Museum Subdistrict of the Metropolitan Zoological Park and Museum District of the City of St. Louis and the County of St. Louis ("Claimant Museum") filed a motion requesting an extension of time within which to file its motion for attorney's fees, costs, and post-judgment interest in this case ("Motion for Extension"). Claimant Museum sought to extend the time within which to file a motion pursuant to the mandatory fee-shifting provision contained in the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), specifically 28 U.S.C. §2465(b), which requires payment of attorney's fees, costs and post-judgment interest to a party who substantially prevails against the Government in a civil forfeiture proceeding.  ECF No. 67, p. 3 para. 4.  CAFRA's fee-shifting provision does not, however, specify the time within which such motions must be filed.  On July 2, 2014, the Court granted the Museum's request for extension and ordered the deadline extended to July 31, 2014 ("July 2 Order").

On July 7, 2014, the Government filed its Motion to Vacate this Court's July 2 Order and a Memorandum in Opposition to Claimant Museum's Motion for Extension ("Memorandum in

1

Opposition"). In it, the Government argues that Claimant Museum's Motion for Extension should have been denied for two reasons: (1) Claimant Museum should have filed its Motion for Extension within 21 days of either A) this Court's April 2, 2012 entry of the Order dismissing this action pursuant to Fed. R. Civ. P. 58, or B) this Court's June 28, 2012 Order denying the Government's Motion for Leave to Amend, and (2) Claimant Museum failed to demonstrate the "excusable neglect" required for such an extension pursuant to Fed. R. Civ. P. 6(b)(1)(B) and 54(d)(2)(B), and E.D. Mo. L.R. 54-8.02 and 54-8.03.

As an initial matter, the terms "entry of judgment" and "entry of final judgment" mean two very different things in the context of the filing period for a motion for attorney's fees. *Gatimi v. Holder*, 606 F.3d 344, 350 (7th Cir. 2010). "Entry of judgment," the term used in Rule 54(d)(2)(B), refers to the ministerial task of entering judgment on the docket in a separate document pursuant to Rule 58 and denotes the point at which an appeal may be taken. *Brown v. Shalala*, 859 F. Supp. 1304, 1308 (E.D. Ca. 1994) (*citing United States v. Indrelunas*, 411 U.S. 216, 219 (1973) (holding that Rule 58 is intended to provide certainty for the parties involved **as to when the time for appeals begins to run**.) (emphasis added)). In stark contrast, "entry of **final** judgment," the term used in E.D. Mo. L.R. 54-8.02 and 54-8.03 and the Equal Access to Justice Act, 28 U.S.C. §2412 ("EAJA"), refers to entry of judgment that is final and no longer appealable. *Melkonyan v. Sullivan*, 501 U.S. 89, 95-97 (1991); *see also Al-Harbi v. I.N.S.*, 284 F.3d 1080, 1082-84 (9th Cir. 2002); *United States v. Eleven Vehicles, Their Equip. & Accessories*, 200 F.3d 203, 209 (3d Cir. 2000) ("There currently is no dispute that the Ivy's satisfied the EAJA's requirements for their initial claim to attorney fees and expenses incurred in the underlying litigation. They filed their claim within thirty days after the final dismissal of the forfeiture case became unappealable."); *Youngsdale & Sons Constr. Co., Inc. v. United States*, 31

Fed. Cl. 167, 170-72 (Fed. Cl. 1994); *Keasler v. United States*, 766 F.2d 1227, 1230-31 (8th Cir. 1985) ("We hold that the order dismissing the government's appeal is a final judgment under section 2412(d)(1)(B))"; *Mass. Union of Pub. Hous. Tenants, Inc. v. Pierce*, 755 F.2d 1777, 180 (D.C. Cir. 1985) ("We hold that the 30-day period provided for in Section 2412(d)(1)(B) begins to run only when a judgment is 'no longer contestable through the appellate process.'") (citations omitted); *Fedpausch v. Heckler*, 763 F.2d 229, 232 (6th Cir. 1985); *McDonald v. Schweiker*, 726 F.2d 311, 313-15 (7th Cir. 1983); *EEOC v. Mid-Minnesota Fed. Credit Union*, 820 F. Supp. 432, 434 (D. Minn. 1993) ("For purposes of EAJA, the judgment became final when the court of appeals dismissed the appeal because no further appeal of the court's order could be made.").

Courts reason that entry of a final and non-appealable judgment is the appropriate trigger "[i]n light of the fact that the claimant might seek to recover fees for the performance of appellate work, '[i]t makes more sense, at least from the claimant's viewpoint, to be able to file a single application at the conclusion of all proceedings. . . .'" *Youngsdale & Sons Constr. Co., Inc.*, 31 Fed. Cl. at 171. In *McDonald v. Schweiker*, the Seventh Circuit considered at length the difference between "entry of final judgment" and "entry of judgment," as well as the gravity associated with each:

> The term "final judgment," which appears 151 times in the United States Code, does not have a single fixed meaning. Sometimes it denotes a judgment that disposes of the plaintiff's claim in the district court. See, e.g., Fed.R.Civ.P. 54(b); cf. 28 U.S.C. § 1291 ("final decisions"). But sometimes it denotes the judgment that writes *finis* to the entire litigation, after all appellate remedies have been either exhausted or, as here, abandoned. See, e.g., Clayton Act, § 5(a), 15 U.S.C. § 16(a). Context may disambiguate. Where the purpose of a statute or rule is to indicate what orders are appealable, as is true of Fed.R.Civ.P. 54(b) or 28 U.S.C. § 1291, finality must refer to the pre-appellate proceedings. But in a statute such as 46 U.S.C. § 748, which defines the circumstances under which the United States will pay admiralty claims, "final judgment" must mean final after all appeals, for one cannot imagine the government being willing to pay before then (as we are about to see).

3

*McDonald v. Schweiker*, 726 F.2d 311, 313-15 (7th Cir. 1983).

The Court then observed that "[t]he legislative history of the Equal Access to Justice Act contains no explanation of the meaning of final judgment" and that the "government's suggestion that the question can be decided by reference to the familiar proposition that waivers of sovereign immunity are narrowly construed is unpersuasive since we cannot see what difference it will make to the Treasury of the United States if the 30-day period for making a fee application runs from the end of the district court proceedings or from the end of all the proceedings; the amount of the fee award will not be affected and that is the important thing to the public." *Id.*  The court went on to take careful note of the practical consequences underlying the issue, and the relative absurdity of suggesting that there should be two fee and cost reimbursement procedures for trial and appellate work. *Id.*  One such consequence is the cost to the applicant of having to file multiple fee applications. *Id.* "*United States v. 329.73 Acres,* 704 F.2d 800, 810–11 (5th Cir.1983), holds, and the government does not question, that the Equal Access to Justice Act, like other attorney-fee statutes, allows a prevailing party in appropriate cases to obtain an award of fees for time spent prosecuting or defending an appeal as well as for time spent litigating in the district court." *Id.* Cf. *Bond v. Stanton,* 630 F.2d 1231, 1234 (7th Cir.1980).

> This in itself is a damaging concession for the government to make since if "final judgment" means final judgment in the district court a prevailing party would have to file an application for fees on appeal before the amount of those fees was known. As this would be a rather absurd way of proceeding we interpret the government's concession to mean that, for purposes of getting an award of fees for appellate work, "final judgment" means the final decision of the appellate court. This shows that "final judgment" indeed does not have one meaning and also that under the government's view Mrs. McDonald would have had to file a second fee application, for any appellate work (if the government had pursued its appeal), after the end of the appellate proceedings. It makes more sense, at least from the claimant's viewpoint, to be able to file a single application at the conclusion of all the proceedings, though if the government unreasonably resists

4

> the fee application, and the claimant seeks fees for proving fees, as in *Bond v. Stanton, supra,* 630 F.2d at 1235, or *Muscare v. Quinn,* 680 F.2d 42 (7th Cir.1982), the claimant would have to file a supplementary fee application after the conclusion of the proceeding on his initial fee application.

*Id.*

The *McDonald* court also dealt with the issue of compelling or even interpreting fee-shifting provisions to require that such an application be filed before an appeal is taken:

> An additional consideration is that to force the claimant to put in his fee application within 30 days of the filing of the final judgment in the district court, which is to say before the government need file its notice of appeal, delivers into the hands of the government a potent, acknowledged, and from the standpoint of the policy of the Equal Access to Justice Act perverse weapon for discouraging meritorious fee applications. As this case demonstrates, the government is unlikely to pursue an appeal where the stakes are only $652.50. Its adversary knows this and knows also that if he increases the stakes to the government by applying for fees, the government (as it emphasized to us in its briefs and at argument) will be more likely to appeal the underlying judgment. Thus, if Mrs. McDonald's counsel had had to decide whether to apply for fees before the government had to decide whether to pursue the appeal, he would have faced an exquisite dilemma: forgo any fee application and thereby preserve the wretched pittance that his client had wrung from the Social Security Administration only after bringing a review proceeding in a federal district court, or jeopardize her judgment in the hope of getting a reasonable fee for his work. The framers of the Equal Access to Justice Act could not have meant to create such a dilemma when they used the words "final judgment" without in all likelihood considering what the words might mean in the setting of the present case. They wanted to make it easier, not harder, for people of limited means to collect their small claims from the government. See H.R.Rep. No. 1418, *supra,* at 18. Finally, we are told that the General Accounting Office will not approve payment of a claim under the Equal Access to Justice Act until all appellate proceedings are ended; and we are at a loss to see what interest is served by requiring that the fee application be made before—sometimes long before—it is actually payable.

*Id.*

When a party has filed an appeal, final judgment does not occur until the appeal has been resolved by ruling or dismissed. Even then, the judgment is not truly final until the action has been terminated in the court of last resort. As conceded in the Government's Memorandum in

5

Opposition, the Government is still deciding whether it will seek a rehearing of the Eighth Circuit Order affirming this Court's denial of the Government's Motion for Leave to Amend, which the Government must decide on or before July 28, 2014.  ECF No. 70, p. 3 n.1.  Thus, there has been no final judgment in this case for the purpose of a motion for attorney's fees, costs, and post-judgment interest.

A.      **Fed. R. Civ. P. 54(d)(2)(B) Does Not Apply to the CAFRA Fee-Shifting Provision**

Contrary to the Government's position, Rule 54(d)(2)(B) and its time limitations, by its own terms, do not apply to Claimant Museum's Motion for Extension in connection with a motion for attorney's fees, costs, and post-judgment interest pursuant to the CAFRA fee-shifting provision. Rule 54(d)(2)(B) itself specifically states that it is trumped by statutory fee-shifting provisions, such as 28 U.S.C. §2465(b). Fed. R. Civ. P. 54(d)(2)(B) ("Unless a statute or a court order provides otherwise . . . .") (emphasis added).  The Government has not - and cannot - cite a single case in which a motion pursuant to CAFRA's fee-shifting provision was denied due to the movant's failure to comply with Rule 54(d).  In fact, of the two cases in which the issue of Rule 54(d)'s application to a similar situation was at hand, courts in both cases declined to apply Rule 54(d) to the civil forfeiture action.  *See United States v. Thirteen Thousand Two Hundred Seventy-Five Dollars and Twenty-One Cents, More or Less, in United States Currency*, 2007 WL 316455, *2 (W.D. Tex. Jan. 31, 2007) ("Rule 54(d)(1) does not govern the award of costs in this case because 28 U.S.C. §2465(b)(1)(A) expressly provides the legal standard for the award of both attorney's fees and litigation costs in civil forfeiture actions.") (emphasis added); *United States v. Nine Million Forty-One Thousand Five Hundred Ninety-Eight Dollars and Sixty-Eight Cents*, 976 F. Supp. 642, 653-54 (S.D. Tex. 1997) ("Rule 54(d) does not apply to cases in which an express provision for costs is 'made either in a statute of the United States or in these rules.'")

(emphasis added).  Thus, Rule 54(d)(2)(B) plainly does not apply to motions for attorney's fees, costs, and post-judgment interest sought pursuant to CAFRA's fee-shifting provision.

**B.     This Court's Local Rules 54-8.02 and 54-8.03 Do Not Apply to the CAFRA Fee-Shifting Provision**

E.D. Mo. L. R. 54-8.02 and 54-8.03 likewise do not apply to this case.  Local rules must be consistent with federal statute and federal rules.  Fed. R. Civ. P. 83(a)(1).  E.D. Mo. L.R. 54-8.02 and 54-8.03 are merely "companion" rules to Fed. R. Civ. P. 54.  *See* E.D. Mo. L.R. 1-1.01.  As companion rules to Rule 54, E.D. Mo. L. R. 54-8.02 and 54-8.03 must be construed consistent with the terms of Rule. 54.  *Tampa Bay Water v. HDR Eng'g, Inc.*, 731 F.3d 1171, 1186 (11th Cir. 2013); *Ricoh Co., Ltd. Patent Litig.*, 661 F.3d 1361, 1370 n.5 (Fed. Cir. 2011); *OFS Fitel, LLC, OFS v. Epstein, Becker & Green, P.C.*, 549 F.3d 1344, 1361 (11th Cir. 2008); *Lewis v. Sch. Dist. #70*, 523 F.3d 730, 739 (7th Cir. 2008); *Dattner v. Conagra Foods, Inc.*, 458 F.3d 98, 99 n.1 (2d Cir. 2006) ("Because local rules must be consistent with the Federal Rules of Civil Procedure, Local Rule 54.1 must be read in accordance with Rule 54(d). (*citing* 28 U.S.C. §2071(a); Fed. R. Civ. P. 83); *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993) ("While that rule might arguably be read, out of context, . . ., when read together with Federal Rule of Civil Procedure 56, as it must be . . . .  To adopt an interpretation of Local Rule 2.07 that is inconsistent with our reading of Rule 56 would yield a result prohibited by statute and rule.") (*citing* 28 U.S.C. §2071; Fed. R. Civ. P. 83); *Hill v. Cray Research, Inc.*, 864 F. Supp. 1070, 1074 (E.D. N.M. 1991) ("The Court does not intend the Local Rules to be read as inconsistent with the Federal Rules, and, to the extent that they may be so interpreted, the Local Rules must yield.") (citations omitted).

Rule 54 provides that it governs requests for attorney's fees "[u]nless a statute [such as 28 U.S.C. §2465(b)] provides otherwise . . . ."  Fed. R. Civ. P. 54(d).  As companion rules, E.D.

7

Mo. L. R. 54-8.02 and 54-8.03 must be interpreted to also include the limitations included in Rule 54.  Reading these rules consistently with each other and with federal statute, the CAFRA fee-shifting provision likewise trumps E.D. Mo. L. R. 54-8.02 and 54-8.03.  Thus, E.D. Mo. L. R. 54-8.02 and 54-8.03 are inapplicable to a motion for attorney's fees, costs, and post-judgment interest pursuant to 28 U.S.C. §2465.

Importantly, E.D. Mo. L. R. 54-8.02 and 54-8.03 state that motions for attorney's fees and bills of costs must be filed no later than twenty-one (21) days of entry of final judgment, and that failure to file within that time period may constitute a waiver.  E.D. Mo. L.R. 54-8.02 and 54-8.03 (emphasis added).  In contrast, Rule 54(d) merely states that motions for attorney's fees and costs must be filed within fourteen (14) days of entry of judgment.  This Court's change to the language of the general fee-shifting provision – from entry of judgment to entry of final judgment – is significant.  Application of the Rule 54 definition of entry of judgment here "would mean that the failure to file a timely motion for attorney's fees, costs, and post-judgment interest each time an appealable order is entered would bar an award of attorneys fees for work done prior to the date of an appealable order." *Paskel v. Heckler*, 581 F. Supp. 15, 16 (E.D. Pa. 1984).  As discussed above, use of the phrase "entry of final judgment" reflects the Eastern District of Missouri's intention that motions for attorney's fees and costs need not be filed until twenty-one days after judgment in the action is final and not appealable.  Inasmuch as the word "final" is included in the E.D. Mo L.R. 54-8.02 and 54-8.03, they plainly supersede Rule 54(d). *See Yousuf v. UHS of De La Ronde, Inc.*, 110 F. Supp. 2d 482, 486 (E.D. La. 1999).  Such an interpretation avoids both the unnecessary waste of judicial resources that would be caused by filing petitions for fees in cases that are ultimately reversed or remanded.  *Taylor*, 749 F.2d 171, 173 (3d Cir. 1984).

Judgment in this case will not be final and non-appealable unless and until the Government has exhausted its appellate review rights.  "**Inasmuch as a plaintiff must be a prevailing party** [to request attorney's fees, costs, and post-judgment interest pursuant to CAFRA's fee-shifting provision] . . ., **a petition for a fee cannot be resolved until all appeals have run**." *Id.*  (emphasis added).  Even if E.D. Mo. L.R. 54-8.02 and 54-8.03 apply to this case, Claimant Museum's Motion for Extension was timely pursuant to Rule 6(b)(1)(B).  "This flexible time limit satisfies the demands of finality, and avoids the fragmentation of fee petitions that would be occasioned by the alternative interpretation" proposed by the Government.  *Taylor*, 749 F.2d at 174; *see also Youngsdale & Sons Const.*, 31 Fed. Cl. at 173-75.

As the Eastern District of Arkansas put it: "[T]he need and wisdom of applying the Government's interpretation of the [applicable timeline] becomes highly questionable if appeal has been taken from the trial court's decision on the merits.  Moreover, considering the fundamental purposes of [CAFRA] . . . – it would appear inconsistent for Congress to have placed excessive strictures on fee requests where the Government is responsible for prolonging the life of the litigation through appeal." *Keasler v. United States*, 585 F. Supp. 825, 832 (E.D. Ark. 1984).  "The point is that the stringent time limits prescribed under the federal rules for any post hoc challenges to the trial court's decision on the merits simply do not apply in the context of attorney's fee requests."  *Id.* at 833; *see also United States for Heydt v. Citizens State Bank*, 668 F.3d 444, 447 (8th Cir. 1982) (where the Eighth Circuit contemplated that many fee requests would be filed only after appellate work has been completed by suggesting that requests for fees **may** be made prior to the conclusion of all appellate work) (emphasis added).

In addition, and as set out in the relevant Eastern District Local Rules, district courts have discretion to enforce or not enforce their own local rules.  *Michel v. Fisher* 185 B.R. 259, 263

9

(N.D. Ill. 1995) ("At least three circuits have recognized a court's 'inherent power to decide when a departure from its Local Rules should be excused and overlooked.' This power extends over every local rule, regardless of whether a particular rule specifically authorizes the judge to deviate.") (*citing Somlyo v. J. Lu-Rob Enter., Inc.*, 932 F.2d 1043, 1047-48; *Braxton v. Bi-State Dev. Agency*, 728 F.2d 1105, 1107 (8th Cir. 1984); *Allen v. United States Fid. & Guar. Co.*, 342 F.2d 951, 954 (9th Cir. 1965). Courts may, in their discretion, dispense with the time limitations for filing motions for attorney's fees under the Federal Rules of Civil Procedure. *United States v. Eleven Vehicles, their Equip. and Accessories*, 200 F.3d 203, 215 (3d Cir. 2000) ("We believe that these courts are generally correct in their approach permitting a district court to waive a requirement of its local rules in appropriate circumstances. We therefore hold that a district court can depart from the strictures of its own local procedural rules where (1) it has a sound rationale for doing so, and (2) so doing does not unfairly prejudice a party who has relied on the local rule to his detriment."). Claimant Museum will not have truly prevailed in this action until the Government's right to appeal has expired. Therefore, because Claimant Museum's Motion for Extension was timely filed, this Court was well within its discretion when it entered its July 2 Order permitting Claimant Museum to file a motion for attorney's fees, costs, and post-judgment interest by July 31, 2014.

C. **The Equal Access to Justice Act's 30-Day Filing Deadline Should Apply to the CAFRA Fee-Shifting Provision**

The Equal Access to Justice Act, 28 U.S.C. §2412(a), (d), and (e) ("EAJA"), supplement CAFRA's fee-shifting provision. *Spencer v. N.L.R.B.*, 712 F.2d 539, 545 n.18 (D.C. Cir. 1983) (overruled on other grounds) ("[T]he EAJA [was] designed to supplement a host of more specific provisions allowing for the award of attorney's fees in suit brought under statutes granting or protecting various federal rights.") (citations omitted). EAJA operates to partially waive the

10

Government's sovereign immunity with regard to awards of attorney's fees in civil actions, "rendering the United States liable for attorney's fees when the Government otherwise would not be required to pay."  *Scarborough v. Principi*, 541 U.S. 401, 410 (2004) (*citing Scarborough v. Principi*, 273 F.3d 1087, 1089 (Fed. Cir. 2001).  Prior to the enactment of 28 U.S.C. §2465(b), EAJA was the mandatory statute under which prevailing parties were entitled to attorney's fees awards against the Government in civil forfeiture proceedings.  *United States v. Real Prop. Located At 475 Martin Lane, Beverly Hills, Cal.*, 727 F. Supp. 2d 876, 885 (C.D. Cal. 2010) ("Prior to CAFRA's passage in 2000, attorney's fees were routinely sought in forfeiture actions under the Equal Access to Justice Act ("EAJA).") (*citing United States v. Sixty Thousand Two Hundred and One Dollars and No Cents In United States Currency*,  291 F. Supp. 2d 1126, 1130 (C.D. Cal. 2003).

Importantly, the purposes of the EAJA and CAFRA fee-shifting provisions are strikingly similar.  "In passing CAFRA, Congress was reacting to the public outcry over the government's too-zealous pursuit of civil and criminal forfeiture."  *United States v. Khan*, 497 F.3d 204, 208 (2nd Cir. 2007) (*citing United States v. Funds Held In The Name Or For The Benefit Of Wetterer*, 210 F.3d 96, 110 (2d Cir. 2000).  "As part and parcel of this effort to deter government overreaching, Congress provided for the payment of 'reasonable attorneys fees and other litigation costs to claimants who 'substantially prevail[]' in a 'civil proceeding to forfeit property.'"  *Khan*, 497 F.3d at 208 (*citing* 28 U.S.C. §2465(b)(1)(A)).

Similarly, the purpose of EAJA is "to eliminate barriers that prohibit small businesses and individuals from securing vindication of their rights in civil actions and administrative proceedings brought by or against the Federal Government."  *Scarborough*, 541 U.S. at 406; *Miles Constr. v. United States*, 113 Fed. Cl. 174, 177 (Fed. Cl. 2013) (*citing* H.R. Rep. No. 96-

11

1005, at 9 (1980)).  "Congress enacted EAJA to provide a mechanism by which a qualifying party might receive reasonable attorney's fees and expenses for prevailing in litigation involving the United States."  *Miles Constr.*, 113 Fed. Cl. at 177 (*citing Scarborough,* 541 U.S. at 406).  "The EAJA aims to 'ensure that certain individuals . . . will not be deterred from seeking review of, or defending against, unjustified governmental action because of the expense involved.'"  *Castaneda-Castillo v. Holder*, 723 F.3d 48, 56 (1st Cir. 2013) (*citing Aronov v. Napolitano*, 562 F.3d 84, 88 (1st Cir. 2009); *see also Krechioch v. United States*, 316 F.3d 684, 686 (7th Cir. 2003) ("The purpose of the EAJA is to eliminate the financial disincentive for people to challenge unreasonable governmental actions."); *United States v. A Leasehold Interest In Prop. Located At 850 S. Maple, Ann Arbor, Washtenaw County, Mich.*, 789 F. Supp. 1385, 1388 (E.D. Mich. 1992) ("Congress' objective in its passage of the EAJA was to 'encourage relatively impecunious private parties to challenge unreasonable or oppressive governmental behavior by relieving such parties of the fear of incurring large litigation expenses.'") (*citing Spencer,* 712 F.2d at 543-44).  "The Act 'reduces the disparity in resources between individuals . . . and the federal government.'"  *Castaneda-Castillo*, 723 F.3d at 56 (*citing Aronov*, 562 F.3d at 88; H.R. Rep. No. 99-120(I), at 4 and H.R. Rep. No. 99-120).

Congress enacted the CAFRA fee-shifting provision specifically to broaden the rights of prevailing parties to attorney's fees, costs, and post-judgment interest in civil forfeiture proceedings brought by the Government.  "A comparison of the CAFRA and EAJA provisions suggests that Congress intended to liberalize the award of attorney fees, rather than restrict them."  *Sixty Thousand Two Hundred and One Dollars and No Cents In United States Currency*, 291 F. Supp. 2d at 1130; *United States v. Certain Real Prop.*, 566 F. Supp. 2d 1252, 1260 (N.D. Ala. 2008) ("Other courts have interpreted the attorneys' fee provision of CAFRA broadly noting

that when CAFRA's language is compared to that of its predecessor, it suggests that 'Congress intended to liberalize the award of attorneys' fees rather than restrict them. . . . Thus, a comparison of CAFRA fee provisions to EAJA fee provisions reveals that CAFRA not only broadened the class of persons entitled to recover attorneys' fees, but also provided for a greater award."). The application of a more restrictive time period in which to file motions for attorney's fees, costs, and post-judgment interest directly conflicts with the intent of Congress and the purpose of the CAFRA fee-shifting provision. Given the purpose of the CAFRA fee-shifting provision and the clear Congressional mandate to lower the threshold for claimants to seek repayment of attorney's fees and costs associated with unfounded and ill-conceived government forfeiture actions, it is wholly consistent to determine if any deadline restricts the mandatory fee-shifting provision in CAFRA, it is the more permissive thirty-day deadline contained in EAJA.[1]

It is the practice of federal courts to refer to similarly configured federal fee-shifting statutes and precedents, such as EAJA and case law interpreting EAJA, when interpreting CAFRA, unless the terms of the statute conflict with CAFRA. *United States v. One Hundred Eight-Six Four Hundred Sixteen Dollars and No Cents In United States Currency*, 642 F.3d 753, 754-56 (9th Cir. 2011); *see also United States v. One Star Class Sloop Sailboat Built in 1930 with Hull No. 721, Named "Flash II"*, 546 F.3d 26, 38 (1st Cir. 2008) (*citing United States v. Metro. Dist. Comm'n*, 847 F.2d 12, 15 (1st Cir. 1988). Like CAFRA, federal courts have declined to apply the more restrictive time limitations of Rule 54 and companion local rules to

---

[1] It appears that federal courts have yet to address the issue of the deadline for filing a motion for attorney's fees and costs pursuant to 28 U.S.C. §2465, although there is broad acknowledgment that the procedures for applying for attorney's fees are often complex. *See Gordon v Heimann*, 715 F.2d 531, 535 (11th Cir 1983) ("These decisions demonstrate that attorneys' fees have not fallen into one procedural category. This is in part because the procedure may vary with the basis for the request. . . . The rather forked trail of attorney fee award decisions by this court also demonstrates the uncertainty of which procedures should govern requests for attorneys' fees".") (internal citations omitted).

13

EAJA, even when EAJA is silent on timing. *Fruitt v. Astrue*, 604 F.3d 1217, 1220 (10th Cir. 2010) (declining to apply 54d's time limitation applicable to a bill for costs where EAJA was silent on the time period for filing a bill for costs); *Al-Harbi v. I.N.S.* 284 F.3d 1080, 1082 (9th Cir. 2002) ("Thus, to the extent the Ninth Circuit Rule 39-1.6 is inconsistent with EAJA, the Circuit Rule is applicable, and the EAJA controls.") *O'Banion v. United States*, 2003 WL 21693640, *1 (E.D. Ark. June 4, 2003) ("The Court finds that the language 'unless otherwise provided by statute' refers back to the 30-day rule found in 28 U.S.C. §2412(d)(1)(B)."). The Tenth Circuit declined to apply W.D. Okla. L.R. 54.1 to a claim pursuant to EAJA, reasoning as follows:

> Costs should ordinarily be awarded to prevailing parties. But costs may not be assessed against a federal agency unless the award is otherwise authorized by law. It is EAJA that provides the necessary authorization. Thus, consulting with the dictionary and evaluating the statutory scheme leads to the conclusion that Local Rule 54.1 does not encompass Ms. Fruitt's cost request: Ms Fruitt sought costs "pursuant to" or "authorized by" the specific EAJA provision, not the general §1920 listing.

*Fruitt*, 604 F.3d at 1220 (internal citations omitted). EAJA is the most similar statute to the CAFRA fee-shifting provision, by both its terms and purpose, and both can be found in Title 28 to the United States Code – Judiciary and Judicial Procedure. "Considering [the Eighth Circuit's] preference for relying on the context in which a statute appears in determining its meaning. . . .", the thirty-day from entry of final judgment deadline for motions for attorney's fees, costs, and post-judgment interest applies to this case. *See Keasler v. United States*, 766 F.2d at 1231.

WHEREFORE, for the reasons set forth herein, the Government's Motion to Vacate should be denied, and the July 2 Order of this Court should remain in place and effect.

Respectfully Submitted,

/s/ Patrick A. McInerney
Patrick A. McInerney        MO# 37638
DENTONS US LLP
(816) 460-2467
4520 Main Street
Suite 1100
Kansas City, MO  64111

McClain Elizabeth Bryant     MO# 60127
HUSCH BLACKWELL, LLP
(202) 378-2300
750 17th Street, NW
Suite 900
Washington, D.C.  20006

David Linenbroker            MO# 43109
HUSCH BLACKWELL, LLP
(314) 345-6409
190 Carondelet Plaza
Suite 600
St. Louis, MO  63105

*ATTORNEYS FOR THE SAINT LOUIS ART MUSEUM*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 14, 2014, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon all counsel of record.

/s/ Patrick A. McInerney
Patrick A. McInerney, MO #37638
Attorney for Plaintiff Saint Louis Art Museum